THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

LEWIS D. ANDERSON                                                                           PLAINTIFF

v.                                       Civil No. 13-2249

CAROLYN W. COLVIN,[1] Commissioner
Social Security Administration                                                             DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Lewis D. Anderson, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for disability insurance benefits ("DIB") and supplemental security income under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.     Procedural Background**

Plaintiff applied for DIB and SSI on February 21, 2012. (Tr. 10.) Plaintiff alleged an onset date of January 1, 2008 due to depression, anxiety, lower back problems, knee problems, cysts on chest, psoriasis, and panic attacks. (Tr. 139.) Plaintiff's applications were denied initially and on reconsideration. Plaintiff requested an administrative hearing, which was held on November 5, 2012 in front of Administrative Law Judge ("ALJ") Ronald L. Burton.  Plaintiff was present to testify and was represented by counsel.  The ALJ also heard testimony from Vocational Expert ("VE") Debra Steele. (Tr. 24.) Plaintiff amended his onset date to October 1, 2009 at the hearing. (Tr. 29.)

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

At the time of the administrative hearing, Plaintiff was 48 years old, and possessed a GED. (Tr. 27.) The Plaintiff had past relevant work experience ("PRW") as a general laborer and bricklayer apprentice. (Tr. 18.)

On November 21, 2012, the ALJ concluded that Plaintiff suffered from the following severe impairments: disorder of the back, disorder of the knees, depression, and anxiety. (Tr. 13.) The ALJ found that Plaintiff maintained the residual functional capacity to perform medium work, "except that he can perform work where interpersonal contact is routine but superficial, the complexity of tasks is learned by experience and involves several variables and the use of judgment within limits and the supervision required is little for routine tasks but detailed for nonroutine tasks." (Tr. 15.) After eliciting testimony from the VE regarding Plaintiff's PRW, the ALJ determined that Plaintiff is capable of performing his PRW as a general laborer and brick layer apprentice. (Tr. 18.)

Plaintiff requested a review by the Appeals Council on December 3, 2012. (Tr. 6.) The Appeals Council declined review on October 9, 2013. (Tr. 1.) Plaintiff filed this appeal on November 21, 2013. (ECF. No. 1.) Both parties have filed appeal briefs, and the case is now ready for decision. (ECF Nos. 13, 14.)

**II. Applicable Law**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v.*

*Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III. Discussion

Plaintiff raises four issues on appeal: 1) the ALJ did not fully and fairly develop the record; 2) the ALJ did not include all of Plaintiff's severe impairments; 3) the ALJ's RFC determination is inconsistent

with the record; and 4) the ALJ failed to ask the VE if Plaintiff could perform his past relevant work. (ECF. 13 at 6-14.)

Because Plaintiff's medical history is pertinent to each of these arguments, it will be summarized here prior to addressing each argument in turn.

Plaintiff saw Dr. Terry Clark of Cooper Clinic on May 3, 2001 for treatment of depression due to marital problems. Plaintiff reported using a family member's Prozac and reporting that it helped. Dr. Clark gave him some samples of Prozac and stated he would recheck him in two weeks. There are no further records from Dr. Clark. (Tr. 209.)

Plaintiff saw Dr. Wendell Weed Jr. of North Hills Dermatology Clinic in October and November of 2008 for psoriasis and acne. He was given prescriptions for both. (Tr. 213.) A cystic lesion was found on his neck. (Tr. 216.)

Plaintiff saw Dr. Cyril Severns of The Dermatology Clinic on May 5, 2011 for psoriasis. He was prescribed several ointments. (Tr. 218-19.)

Plaintiff was turned down for disability benefits initially on April 6, 2012, and on reconsideration on April 23, 2012. (Tr. 44-47.)

Plaintiff was examined by consulting examining physician Dr. Chester Lawrence Carlson, D.O. on March 12, 2011. Dr. Carlson's notes indicate that Plaintiff reported his back problems started in 2008, his knee pain started about six months prior, he noticed the cyst on his chest seven years ago, the psoriasis was diagnosed in 1980, the depression was diagnosed in 2001, and the panic attacks started about eight years ago. (Tr. 221.) Dr. Carlson diagnosed depression and anxiety by patient history, chronic low back pain, knee pain, and small subcutaneous lipoma on the chest wall. (Tr. 225.) He ordered x-rays of the knees and back. The knee x-rays were normal. The back x-ray showed mild anterior spurring at L3 and L4, otherwise the back x-ray was normal. (Tr. 225.) In reference to the straight leg test, he stated that he felt that the limitation was due to hamstring tightness, "not true back pain." (Tr. 224.) His assessment

AO72A
(Rev. 8/82)

stated that Plainitff was "mildly limited in his ability to bend, squat, lift secondary to back and knee pain." (Tr. 225.)

Plaintiff was seen for a psychological examination by consulting examiner Dr. Spray, PhD. He diagnosed Dysthymia, Anxiety Disorder NOS, and Intermittent Explosive Disorder for Axis I, with Antisocial Personality Disorder for Axis II. (Tr. 228.) As to Plaintiff's adaptive functioning, Dr. Spray noted only mild impairment in his capacity to cope with work-like tasks and his attention and concentration. The most serious issue noted was Plaintiff's ability to interact in a socially adequate manner. Specifically, it was noted that "[i]n a job setting, he is likely to be avoidant and easily angered." (Tr. 229.) Other adaptive functioning categories were normal. (Tr. 229.)

Plaintiff was seen at the Good Samaritan Clinic for back pain and psoriasis on May 30, 2012 and June 30, 2012. (Tr. 295-96.) A spinal x-ray taken on June 5, 2012 showed "mild degenerative disc disease" at the L5-S1 level. Alignment and positioning were normal. (Tr. 297.) He had a followup appointment on July 11, 2012. (Tr. 304.) He presented on October 3, 2012 for flu, blood pressure, and depression. (Tr. 303.)

### A. Record Was Fully and Fairly Developed

Plaintiff argues that the ALJ failed to fully develop the record because he did not request a medical source statement from Dr. Spray, and denied Plaintiff's request that he do so. (Pl.'s Br. at 6-8.)

The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure her decision is an informed decision based on sufficient facts. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). "However, the burden of persuasion to prove disability and demonstrate RFC remains on the claimant." *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010).In determining whether an ALJ has fully and fairly developed the record, the proper inquiry is whether the record contained sufficient evidence for the ALJ to make an informed decision. *Haley v. Massanari*, 258 F.3d 742, 748 (8th Cir. 2001). A reversal for failure to develop the record is "only warranted where such failure is unfair or prejudicial." *Id.*

In this case, the record shows that, prior to being denied benefits, Plaintiff made only one visit to a physician complaining of depression. After he was denied benefits, only one of four visits to Good Samaritan Clinic featured depression as the reason for coming to the clinic. This visit was one month prior to his administrative hearing, and shortly after he received notice of his hearing from the Agency on September 18, 2012. (Tr. 95.) Thus, the sparsity of treatment visits do not support his allegation of disability due to depression. *See Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir.1995) (failure to seek medical treatment may be inconsistent with a finding of disability)  Further, the timing of Plaintiff's 2012 complaint of depression suggests that the visit was for the purpose of seeking benefits rather than for legitimate treatment. *Id.* at 486. ("encounters with doctors [that] appear to be linked primarily to [a] quest to obtain benefits, rather than to obtain medical treatment," are inconsistent with a finding of disability.)

Nor does the record indicate that Plaintiff was ever turned away from treatment for lack of funds prior to 2012. *See Murphy v. Sullivan*, 953 F.2d 383, 386-87 (8th Cir. 1992) (a lack of evidence that the claimant attempted to find any low cost or no cost medical treatment for her alleged pain and disability is inconsistent with a claim of disabling pain.) Further, as both Plaintiff's son and wife are disabled, and his son receives regular home health care, (Tr. 41-42), it is unlikely that Plaintiff was unaware of the low-cost health care options prior to 2012, such as those from the Good Samaritan Clinic.

Despite the Plaintiff having only a single visit to a physician for depression prior to 2012, the ALJ nonetheless ordered a consultative examination with Dr. Spray. This examination revealed either normal functioning or mild impairment. The most serious comment was that Plaintiff could be "easily angered" in a work setting. The Mental RFC provided by nonexamining Agency Physician Dr. Winston Brown found that the Plaintiff was moderately limited in four of twenty categories. The remainder were not significantly limited. (Tr. 278.) He also stated that he had "moderate limits in socialization." (Tr. 279.)

Given Plaintiff's failure to seek treatment for mental impairment, the results of the Mental CE, and the results of the Mental RFC, it appears that the ALJ had sufficient evidence upon which to base his

decision. Therefore, his refusal to obtain a medical source statement from Dr. Spray did not constitute error.

### B. ALJ Properly Determined Step Two Severe Impairments

Plaintiff argues that the ALJ erred in failing to find that his psoriasis and Dr. Spray's diagnosis of intermittent explosive disorder and antisocial personality disorder were severe impairments at Step Two.

The burden is upon the plaintiff to establish that an impairment is severe. *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). This burden is not a difficult one for the Plaintiff to meet. *Id.* However, it is also not a "toothless standard" requiring the ALJ to simply rubber-stamp any impairment as severe. *Id*. A mere diagnosis is not sufficient to prove disability, absent some evidence to establish a functional loss resulting from that diagnosis. *Trenary v. Bowen*, 898F.2d 1361, 1364 (8th Cir. 1990). The Eighth Circuit has repeatedly upheld the Commissioner in finding that a claimant did not provide sufficient evidence of severity at Step Two. *Id. See e.g. Id.* at 708 (hand tremors not severe when there was evidence that claimant exaggerated or invented ailments, medical exams proved normal, and any genuine impairment was slight); *Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir.1997) (claimant never followed a regular regime of medical treatment for physical complaints and used no prescription medications for pain or for other conditions; *Nguyen v. Chater*, 75 F.3d 429, 431 (8th Cir. 1996.) (generalized osteoarthritis with significant osteoarthritis in both knees which could be controlled with mild anti-inflammatories was not severe).

The ALJ expressly found that Plaintiff's's psoriasis had not caused any functional loss. Specifically, "the Plaintiff has had psoriasis since he was 17 years-old, and it has not prevented him from performing substantial gainful activity or other worklike activities in the past." (Tr. 13.) Nor does a review of the record reveal that he complained of any loss of function to his physicians when he sought treatment for his psoriasis. Finally, the CE evaluation by Dr. Carlson did not note any physical limitation due to the psoriasis. (Tr. 221.) Therefore the ALJ did not err in finding his psoriasis to be a nonsevere impairment.

AO72A
(Rev. 8/82)

The ALJ did not discuss why he did not include the diagnosis of intermittent explosive disorder or antisocial personality disorder as a severe impairment in the Step Two section of his opinion. However, he expressly noted the lack of treatment for mental impairments later in the opinion. (Tr. 17.) He also noted that the Plaintiff "had not lost jobs due to his problems getting along with others." (Tr. 17.) He also noted Dr. Spray's finding that Plaintiff would be "avoidant and easily angered," but stated "that limitation is accounted for with the finding that he could engage in routine, but superficial, interpersonal contact and do tasks learned by experience and involving limited use of judgment." Additionally, this Court notes that Plaintiff did not allege either of these conditions in his disability application, either by name or by symptom. *See Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (the fact that claimant did not allege disabling condition in his application is significant).

Thus, although it would have been preferable if the ALJ had discussed the intermittent explosive disorder and antisocial personality disorder in the Step Two section of his decision as well as later in the opinion, his failure to do so was merely a deficiency in opinion writing. Nor does it appear that repeating the pertinent information in two sections of the opinion would have changed to outcome of the case. *See Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000) ( "[A] deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency had no practical effect on the outcome of the case.").

### C. RFC Assessment Supported By Substantial Evidence

Plaintiff argues that the ALJ erred in his assessment of Overall RFC because it is inconsistent with the medical record and the ALJ erred in his credibility analysis. Specifically, he argues that an assessment of medium work is inconsistent with Plaintiff's knee and back pain, that the RFC is inconsistent with Dr. Spray's mental impairment findings, and that the ALJ placed too much emphasis on Plainitff's failure to seek treatment. (Pl's Br. at 10-13.)

Plaintiff's failure to seek treatment for mental health impairments has already been addressed above.

Regarding Plaintiff's allegations of knee and back pain, the ALJ expressly noted that Plaintiff's allegations of knee and back pain were not supported by the objective medical evidence. He correctly noted that the x-rays taken in June 2012 showed only mild degenerative disc disease. He specifically referenced the Physical RFC completed by nonexamining Agency Physician Dr. Ramona Bates on April 4, 2012. She expressly noted the normal knee x-rays and the mild disc disease on the back x-ray from Plaintiff's CE with Dr. Carlson. She noted the lack of care for back and knees. She assessed a medium exertional RFC with no additional limitations. (Tr. 237-243.)

The ALJ also noted that, although Plaintiff alleged that his back pain started in 2008, he did not seek treatment for it until 2012. Finally, the ALJ noted that the Plaintiff's own pain report conflicted with the function reports provided by Plaintiff's and his wife. (Tr. 16.) This Court additionally notes that Plaintiff did not seek treatment for his knees and back until after he had been turned down for disability benefits.

Thus, the ALJ has provided several good reasons for discrediting Plaintiff's allegations regarding his knees, back, and mental impairments, including a failure to seek treatment, and lack of objective medical evidence to support Plaintiff's allegations. These are well-established reasons for discrediting a Plaintiff's allegations in the Eighth Circuit. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider); *Shannon*, 54 F.3d at 487 (failure to seek medical treatment may be inconsistent with a finding of disability")

Because the ALJ has provided good reasons for discrediting Plaintiff's allegations of subjective pain, this Court will defer to the ALJ's credibility determination. *See Finch v. Astrue,* 547 F.3d 933, 935-36 (8th Cir. 2008)(we defer to the ALJ's credibility determination, because it was based on multiple valid reasons.) Further, this Court finds that ALJ's RFC findings are consistent with the evidence in the record

and are therefore supported by substantial evidence. *See Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (disability claimant has burden to establish RFC).

### D. Step Four Evaluation Did Not Require Hypothetical to VE

Plaintiff argues that the ALJ erred in determining that he could perform past relevant work because the ALJ did not present a hypothetical question to the VE inquiring if Plaintiff could perform past work.

The Eighth Circuit has clearly stated that VE testimony is not required until Step Five of the analysis. *Banks v. Massanari*, 258 F.3d 820, 827 (8th Cir. 2001) This holds true for both exertional and nonexertional impairments. *Id.* "Vocational expert testimony is not required until step five when the burden shifts to the Commissioner, and then only when the claimant has nonexertional impairments, which make use of the medical-vocational guidelines, or 'grids,' inappropriate." *Id.*

In this case, the ALJ questioned the VE about the requirements of Plaintiff's past work. (Tr. 31-32.) He was not required to pose a hypothetical to the VE in order to determine that Plaintiff could perform past work, and therefore did not err when he did not ask. Plaintiff's reliance on SSR 82-62 for this issue is misplaced.

### IV. Conclusion

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decisions, and thus the decision should be affirmed. The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 3rd day of December 2014.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A (Rev. 8/82)